# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:12-cr-00196 |
| | ) | Judge Sharp |
| ABDULLAHI FARAH | ) | |

## MEMORANDUM

Pending before the Court is Defendant's timely filed Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(c) (Docket No. 76), to which the United States filed a response (Docket No. 80) and Defendant a reply (Docket No. 81). In the motion, Defendant argues that the Court should set aside the guilty verdict found by the jury with respect to each of three counts—misbehavior in or so near the Court's presence as to obstruct the administration of justice (18 U.S.C. § 401(1)), criminal contempt (18 U.S.C. § 401(3)), and obstructing, attempting to obstruct, or in any way interfering with or preventing the enforcement of 18 U.S.C. § 1591 (18 U.S.C. § 1591(d))—due to insufficient evidence of obstruction and incorrect jury instructions.

On a motion for judgment of acquittal, the Court views the evidence in "a light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences from the testimony." *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007) (citation omitted). "The relevant question in assessing a challenge to the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* "A defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (citation omitted).

For the following reasons, Defendant's motion will be granted in part and denied in part. The Court will discuss each count in turn.

## I. Count I (18 U.S.C. § 401(1))

Defendant argues that in order to convict him on this count, the jury was required to find "actual obstruction," and that the government introduced no evidence establishing or justifying a reasonable inference that the administration of justice was actually obstructed. The United States responds that Defendant's refusal to respond to questions at a court-ordered deposition constitutes *ipso facto* obstruction because it prevents the United States from obtaining the testimony of a material witness.

The parties debate the significance of a litany of cases interpreting the language of § 401(1). What is clear is that § 401(1) establishes a contempt power little-used outside the courtroom; most authorities discuss it in the context of the summary contempt procedure provided under Fed. R. Crim. P. 42(b). The statute provides that a "court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice[.]" To find contempt under § 401(1),

> (1) There must be conduct which constitutes "misbehavior"; (2) the misbehavior must amount to an "obstruction of the administration of justice"; (3) the conduct must occur in the court's presence[1]; (4) there must be some form of intent to obstruct. The minimum requirement for establishing intent was described as proof of "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful."

*Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir. 1985); *accord United States v. Moncier*, 571 F.3d 593, 598 (6th Cir. 2009). The Sixth Circuit requires that "willful disobedience be proved beyond a reasonable doubt and defines willfulness as 'a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation.'" *Vaughn*, 752 F.2d at

---

[1] Contempts prosecuted with notice and an adversary hearing, the procedure followed in this case, "need only be 'in or near' the court's presence[.]" *U.S. v. Arredondo*, 349 F.3d 310, 316 (6th Cir. 2003); *see* Fed. R. Crim. P. 42(a). This refers to the geographic vicinity of the court. *Nye v. U.S.*, 313 U.S. 33, 48-52 (1941).

1169. It is well settled that the contempt power should be limited "to the least possible power adequate to prevent actual obstruction of justice." *In re McConnell*, 370 U.S. 230, 235 (1962). In other words, a court should exercise restraint when vindicating its authority, and its power should be directed at conduct that actually obstructs the administration of justice.

In particular, Defendant and the government differ on whether Defendant's refusal to testify at the September 12, 2012, deposition itself amounted to an obstruction of the administration of justice. "Obstruction of the administration of justice is not to be confused with obstruction of justice. Justice may be obstructed by mere inaction, but obstruction of the administration of justice requires something more—some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." *United States v. Warlick*, 742 F.2d 113, 115-16 (4th Cir. 1984). "[A]n actual, not a theoretical obstruction" is required. *Vaughn*, 752 F.2d at 1168. To prove obstruction, "the government must show 'that the defendant's acts delayed the proceedings, made more work for the judge, induced error or imposed unnecessary costs on the other parties.'" *United States v. Meacham*, 65 F. App'x 529, 535 (6th Cir. 2003) (Daugherty, J., dissenting) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 532 (5th Cir. 1992)).[2] "At a minimum, the defendant's misconduct must have 'had an effect on the proceedings.'" *Id.* (citing *United States v. Oberhellmann,* 946 F.2d 50, 52 (7th Cir. 1991)).[3] "[F]alse testimony alone, whether written or oral, will not amount to contempt

---

[2] The United States attempts, unpersuasively, to distinguish cases from other circuits laying out the standard for obstruction. Absent greater detail in Sixth Circuit precedent on the question of what constitutes actual obstruction under § 401(1), the Court looks to the tests used by other circuits.

[3] Citing Judge Posner's comment in *Oberhellmann* noting a "long line of cases" establishing that misbehavior must have "actually obstructed the administration of justice—by delaying proceedings, making more work for the judge, inducing error, imposing costs on parties, or whatever," the government argues that preventing material testimony from being obtained falls within the catch-all "whatever" category. (Docket No. 80 at 8); *see* 946 F.2d at 52. But like the specifically enumerated items in Judge Posner's list, § 401(1) concerns obstruction of "the district judge in 'the performance of judicial duty.'"

of court," *Arredondo*, 349 F.3d at 318 (internal quotation marks and citations omitted), but a "contumacious silence" that disrupts the progress of a trial will, *U.S. v. Wilson*, 421 U.S. 309-315-16 (1975).

The United States cites *Arredondo* for the proposition that "[a] witness's refusal to respond to questions is a classic form of contempt," but in context that statement, and the case upon which it relies, provides little support for the government here. *See* 349 F.3d at 319 (citing *United States v. Seavers*, 472 F.2d 607, 611 (6th Cir. 1973)). The witness in *Seavers* refused to testify *at trial*—the judge twice excused the jury in order to examine the witness before summarily punishing him for contempt—which had the effect of delaying the proceedings.[4] The court in *Arredondo*, meanwhile, did not address the question of a witness who refused to testify; it considered whether the filing of evasive and inconsistent affidavits, which "compelled the expenditure of scarce judicial resources" and "threatened unwarranted professional discipline on an attorney," could be punished as contempt, determining it could not. 349 F.3d at 320. That is in part because, at least before its amendment in 2002, Fed. R. Crim. P. 42(a) was "still a pretty summary procedure," *Oberhellmann*, 946 F.2d at 52, and courts are cautioned to show "restraint and discretion" in the exercise of judicial power. *U.S. v. Aleo*, 681 F.3d 290, 312 (6th Cir. 2012) (Sutton, J., concurring) (citing *Chambers v. NASCO*, 501 U.S. 32, 44 (1991)).

---

*In re McConnell*, 370 U.S. at 234 (citation omitted). A defendant's failure to testify in a deposition held outside the court's presence may be misbehavior, but alone it does not satisfy the "requirement of causality, and hence of an effect of the defendant's contemptuous behavior and hence of an actual obstruction of justice"—at least, not without proof that "but for" the misbehavior, the administration of justice would have proceeded in a more orderly fashion. *See Oberhellmann*, 946 F.2d at 53.

[4] Similarly, *Wilson*, upon which the government relies, involved "intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice." 421 U.S. at 315-16 (footnote omitted). A witness's "contumacious silence . . . impeded the due course of [a] trial . . . . A contumacious refusal to answer not only frustrates the inquiry but can destroy a prosecution." *Id.* at 316. Here, as discussed *infra*, there was no trial in progress, nor was evidence introduced indicating that Defendant's refusal to testify had an effect on the *Adan* case.

With regard to the proof in this case, the United States contends that its evidence, and the reasonable inferences that could be drawn from it, established at trial that Defendant deprived the government, the *Adan* defendants, and the court of his testimony, obstructing the administration of justice. (Docket No. 80 at 10). However, as Defendant correctly points out, none of the three witnesses who testified at trial stated that Defendant's refusal to testify at the September 2012 deposition had any effect whatsoever. (Docket No. 76 at 6-7). Donna Buford, a court reporter, testified that a deposition was convened and that Defendant refused to testify. Heather Weyker Sanders, a St. Paul, Minnesota, police officer, testified that Defendant refused to testify at the deposition. And Mark Shafer, a special agent with the Federal Bureau of Investigation, read a transcript from the deposition. It indicated that four or five trials remained in relation to *United States v. Adan, et al.*, No. 3:10-cr-00260, and that Defendant refused to testify in each and every one of those. It also indicated that no trial dates were then presently set in relation to any defendant in the *Adan* case. Shafer was later recalled to the stand to testify that the deposition was taken on the 7th floor of the federal courthouse building.

Documentary evidence included Judge Campbell's order, the government's deposition notices, and the deposition transcript. Finally, the government introduced a lengthy document in which Defendant stipulated that he had material evidence and that the United States was engaged in the enforcement of relevant federal laws.

This evidence did not, however, establish or warrant the reasonable inference that Defendant's refusal to testify delayed a prosecution, made more work for the judge, or had any effect whatsoever on the proceedings. Neither Agent Shafer nor Officer Sanders testified that their investigation was impeded by Defendant's failure to provide testimony to be used at trial. No proof established that a trial date was moved, a jury excused, a proceeding infected with

error, or that other parties were forced to bear greater costs.  Defendant's persistent refusal to testify in the *Adan* matter may have actually obstructed the government's prosecution, but if it did, the jury never heard about it.  Because no evidence at trial supported the "obstruction of the administration of justice" prong, the Court finds that no rational trier of fact could have found that the administration of justice was actually obstructed by Defendant's refusal to testify at the deposition.  And since "the government has the burden . . . it loses." *Oberhellmann*, 946 F.2d at 53.  The verdict will be set aside, and an acquittal will be entered.  Fed. R. Crim. P. 29(c)(2).

Because the Court will grant Defendant's motion with respect to Count I, it need not address at length Defendant's challenges to the government's closing argument or the jury instructions.  However, in the event the Court of Appeals subsequently vacates or reverses this order, the Court conditionally determines that a new trial is not warranted.  Fed. R. Crim. P. 29(d).  If the foregoing analysis is rejected as a matter of law, the jury's verdict will be properly supported by the evidence, and the Court finds no merit in Defendant's other challenges to the conviction.

## II.    Count II (18 U.S.C. § 401(3))

18 U.S.C. § 401(3) grants a court the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, including . . . (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command."  In order to establish a violation of § 401(3), the government must prove beyond a reasonable doubt: (1) the existence of a "specific, clear, and unequivocal court order"; (2) that the defendant knew of the order; and (3) that the defendant disobeyed the order with a willfulness that implies a deliberate or intended violation. *United States v. Prince*, No. 12-3789, 2013 WL 1693977 (6th Cir. Apr. 18, 2013) (citations omitted).

Defendant argues that "the jury was not permitted to determine whether Mr. Farah willfully disobeyed a specific, clear, and unequivocal court order," and therefore the guilty verdict should be set aside. (Docket No. 76 at 14, full capitalization removed). Defendant submits that the Court should have permitted him to argue at trial that no deposition occurred within the meaning of 18 U.S.C. § 3144 because Defendant was not sworn on September 12, 2012. Defendant also argues that his repeated statements at the September 2012 proceeding indicating that he was not going to testify did not amount to a "refusal to testify." He contends that, at worse, these statements indicate a future refusal to testify, and that "anticipatory contempt" is not a punishable offense. (Docket No. 76 at 16).

The Court has reviewed Defendant's arguments with respect to Count II and finds that they lack merit. The jury received a copy of Judge Campbell's order, and evidence in the record supports the jury's determination that the order was specific, clear, and unequivocal, and that the Defendant knew of the order and willfully disobeyed it. The Court's jury instruction indicating that it was not a defense to this case that Defendant was unsworn was proper, given that the elements of the offense did not require the jury to determine the formalities of a deposition but instead whether Judge Campbell's order was willfully disobeyed. Nor do the formalities shed probative light on Defendant's intent or other elements of the offense. Furthermore, Defendant's "anticipatory contempt" and "refusal to testify" argument is foreclosed by *U.S. v. Johnson*, which held that a defendant's refusal to testify at a pretrial deposition hearing constitutes a present, not a future, refusal and is punishable by contempt. 752 F.2d 206, 210 (6th Cir. 1985) (in the context of civil contempt).

## III. Count III (18 U.S.C. § 1591(d))

18 U.S.C. § 1591(d) imposes criminal liability for obstructing, attempting to obstruct, or in any way interfering with or preventing the enforcement of § 1591, a child sex trafficking statute. Defendant first contends that § 1591(d) requires a finding of "actual obstruction," which was not established by the government at trial, *see supra* Sec. I, and second, he challenges the statutory language "in any way interferes with" as unconstitutionally vague, given the statute's lack of a *mens rea* requirement. For those reasons, he argues that under *Zant v. Stephens*, 462 U.S. 862, 881 (1983), the jury's general verdict must be set aside because it may have rested exclusively on an insufficient ground.

Whether or not § 1591 requires a finding of "actual obstruction" of the enforcement of § 1591 equivalent to the finding required under § 401(1) has not been examined by courts. However, the plain language of the two statutes in question makes it clear that they prohibit obstruction of different processes: one, the "administration of justice," and the other, the "enforcement" of § 1591. Without objection, the jury was instructed that "enforcement" includes "an investigation or prosecution of § 1591(a)." (Docket No. 79 at 63). Thus a reasonable juror could find, based upon the proof in this case, that Defendant obstructed the enforcement—*i.e.*, prosecution—of the statute by declining to testify at the September 2012 deposition. This is a different factual finding than is required under § 401(1), a law with an entirely separate purpose from § 1591, *compare In re Williams*, 306 F. Supp. 617, 619 (D.D.C 1969) (noting that § 401 delimits federal courts' longstanding equitable contempt powers) *and In re McConnell*, 370 U.S. at 234 (identifying as § 401(1)'s purpose "protect[ing] the administration of justice against immediate interruption of court business . . .") *with* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457,

122 Stat. 5044 (2008) (statute combatting human trafficking), and in which the term "obstruction" is modified by a preposition with an entirely different object.[5] Defendant's argument impermissibly grafts the factual finding necessary to support Count I onto Count III.

Defendant next argues that the statutory prohibition of conduct that "in any way interferes with" the enforcement of § 1591 is void as unconstitutionally vague, particularly because the statute lacks a *mens rea* requirement.[6] "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32-33 (1963). A statute whose violation carries criminal penalties is subject to "a relatively strict test" for vagueness. *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 252 (6th Cir. 1994). However, a court is required, if it can, "to construe, not condemn, Congress' enactments." *Skilling v. United States*, 130 S. Ct. 2896, 2928 (2010). With those principles in mind, the Court will examine § 1591 "on its face to determine whether it lacks sufficient definiteness to meet the requirements of the Due Process Clause." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999).

---

[5] Defendant also argues that the jury "could not have known whether to apply the definition of obstruction provided in Count I to Count III." (Docket No. 76 at 10). However, with respect to Count I, the jury was instructed as to the meaning of the term "obstruction of the administration of justice," not "obstruction," foreclosing any reasonable suggestion of confusion.

[6] Defendant contended that the Court should have used a *mens rea* of "corruptly" or "with purpose to obstruct" under § 1591, as well as § 401(1). (Docket No. 76 at 11-14). The Court instructed the jury that a conviction under § 1591 required conduct done "knowingly," that is "voluntarily and intentionally, and not because of mistake or accident or other innocent reason." (Docket No. 79 at 63); *see United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir. 1992) (noting that "'a general rule of construction of criminal statutes provides that where a statute does not specify a heightened mental element such as specific intent, general intent is *presumed* to be the required element'") (citation omitted, emphasis in original). The jury was also instructed that § 401(1) required a form of intent to obstruct, that is, "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful," (Docket No. 79 at 61), which is tantamount to a requirement that Defendant have a specific intent to obstruct the administration of justice. *See U.S. v. Jeter*, 775 F.2d 670, 679 (1985).

"Vagueness may invalidate a criminal statute if it either (1) fails 'to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits' or (2) authorizes or encourages 'arbitrary and discriminatory enforcement.'" *United States v. Bowker*, 372 F.3d 365, 380 (6th Cir. 2004) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56, (1999)), *vacated on other grounds*, 543 U.S. 1182 (2005).

While other portions of § 1591 have been challenged on vagueness grounds, the question of § 1591(d)'s facial validity has not been considered by federal courts. *See United States v. Clinton*, CR 12-40018-01-KES, 2012 WL 5195987 (D.S.D. Oct. 19, 2012). Defendant contends that he could not know what actions could expose him to criminal liability under the statute. It is true that § 1591 lacks the heightened "corruptly" *mens rea* of 18 U.S.C. § 1503, the general obstruction of justice statute, and that "criminal offenses requiring no *mens rea* have a 'generally disfavored status.'" *Liparota v. United States*, 471 U.S. 419, 426 (1985) (citation omitted); *see also Pettibone v. United States*, 148 U.S. 197 (1893) (holding under predecessor to § 1503 that "a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court"). In the context of a vagueness challenge, this is of particular consequence because "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

On the other hand, "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota*, 471 U.S. at 424. And "Congress is not required to use the same structure for all obstruction-of-justice statutes." *United States v. Kernell*, 667 F.3d 746, 754 (6th Cir. 2012) *cert.*

10

*denied*, 133 S. Ct. 259 (noting of another obstruction statute legislative history showing "that Congress designed the provision to be more expansive than earlier obstruction of justice statutes"). Congress did not include a *mens rea* element in § 1591(d), in contrast to § 1591(a), which states the primary offense of "knowingly" participating in or benefiting from activities that the person knew or should have known constituted the sex trafficking of children by force, and in contrast to § 1503. It is evident from legislative history that Congress added identical obstruction language to multiple sections of the statute, and that it was mindful of scienter when doing so. 154 Cong. Rec. H10888-01, 2008 WL 5169865 ("Section 222 conforms the various crimes set forth . . . by extending the obstruction provisions of the Peonage statute (Section 1581) to the other substantive servitude offenses," and noting the effort to expand culpability under § 1591(a) through the addition of a reckless disregard standard).

Moreover, absent a specific *mens rea*, general intent is presumed. *DeAndino*, 958 F.2d at 148; *see also Lambert v. People of the State of California*, 355 U.S. 225, 228 (1957) ("We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime . . . for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition."). This is further warranted where the conviction is based on an act—in this case, the refusal to comply with a court order—that is not by itself innocuous. *Cf. Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (noting conversely that interpretive restraint is appropriate where conduct underlying an obstruction charge is itself innocuous). And finally, in the civil context, a vagueness challenge to a regulatory prohibition on "interfering with" airport screening personnel has been rejected by the Sixth Circuit. *Rendon v. Transp. Sec. Admin.*, 424 F.3d 475, 478 (6th Cir. 2005).

Still, it is not impossible to imagine a scenario under which innocent conduct is criminalized, or the government is able to interpret "in any way interfere with" in such a way as to be arbitrary or discriminatory. This case does not present that scenario though. "Even if a statute might be vague as it relates to other, hypothetical defendants, courts will not entertain vagueness challenges on behalf of a defendant whose conduct clearly falls within the ambit of the statute. '[T]he dispositive point here is that the statutory terms are clear in their application to the plaintiffs' proposed conduct, which means that plaintiffs' vagueness challenge must fail.'" *Kernell*, 667 F.3d at 750 (quoting *Holder v. Humanitarian Law Project,* ––– U.S. ––––, 130 S.Ct. 2705, 2720, (2010)). Defendant had long been on notice—including through prior civil and criminal contempts in the ongoing matter—that he was subject to criminal liability for his failure to testify in the *Adan* case, in which federal human trafficking statutes were enforced. His refusal to testify is not the innocent conduct of an unsuspecting witness interviewed by law enforcement agents on the street, but instead the knowing and conscious choice of someone indisputably on notice of the risks of refusing to testify.[7] Finding sufficient evidence in the record to support Defendant's conviction under any of the grounds enumerated in § 1591(d), the Court will not entertain Defendant's vagueness challenge nor set aside the conviction.

## CONCLUSION

For the foregoing reasons, Defendant's motion will be GRANTED with respect to Count I and DENIED in all other respects. An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[7] With respect to the jury's question as to whether fear constitutes an innocent reason, the Court reiterates its ruling at trial that fear cannot negate the *mens rea* of "knowingly." (Docket No. 79 at 76-84, Trial Transcript Vol. 2).